IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
(CEDAR RAPIDS DIVISION)

| | | |
|---|---|---|
| IOWA PROTECTION AND ADVOCACY SERVICES, INC., | ) ) ) | No. 1:04-CV-00069-LRR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TANAGER PLACE, and TANAGER, INC., | ) ) ) | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| Defendants. | ) | |

**TABLE OF CONTENTS**

|  | **PAGE** |
|---|---|
| FACTUAL BACKGROUND .................................................................................... | 2 |
| I. THE COURT SHOULD ISSUE PRELIMINARY INJUNCTIVE RELIEF BECAUSE IP&A WILL LIKELY PREVAIL ON THE MERITS OF ITS CLAIM, THE HARM TO IP&A OUTWEIGHS THE HARM TO DR. DAVIS, AND PRODUCTION OF THE PERSONNEL FILES IS IN ACCORD WITH THE PUBLIC INTEREST ............................................... | **4** |
| A. IP&A has a Right to Unaccompanied Access to the Residents of Tanager Place Under the PAMII Act .......................................................................... | 4 |
| B. The Issuance of a Preliminary Injunction is in the Public Interest, and the Harm to IP&A and to the Public Outweighs any Possible Harm to Defendants .............................................................................................. | 6 |
| CONCLUSION ........................................................................................................ | 7 |

# FACTUAL BACKGROUND

Plaintiff Iowa Protection and Advocacy Services, Inc. (hereinafter "IP&A") is a private, non-profit Iowa corporation which provides protection and advocacy services to persons with mental illness disabilities pursuant to the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (hereinafter "PAMII Act"), 42 U.S.C. section 10801, *et seq.* Defendant Tanager Place is a psychiatric medical institution for children that is licensed to do business in Iowa in Cedar Rapids, Linn County, Iowa. (Complaint ¶ 2). Defendant Tanager, Inc. is an Iowa corporation owned and operated by Mr. George Estle, the CEO of Tanager Place. (Complaint ¶ 3).

On or about May 29, 2004, Russell Jankowski, a resident at Tanager Place was reported as missing. (Exhibit B, Cedar Rapids Gazette Article). Mr. Jankowski is an individual with mental illness within the meaning of 42 U.S.C. section 10802(4). (Complaint ¶ 12).

IP&A became aware of Mr. Jankowski's disappearance when Judy Price, Director of Quality Improvement at Tanager Place, called IP&A on June 1, 2004, to inform IP&A that Mr. Jankowski may have drown in the Cedar River. (Complaint ¶ 13). Following the notification of Ms. Price of the possible drowning, IP&A sent by facsimile to Tanager Place a letter outlining IP&A's federal authority and requesting specific information. (Exhibit C, Notification of Authority).

The following day, on June 2, 2004, in accordance with IP&A's mandate, investigators from IP&A arrived at Tanager Place and requested access to the facility to conduct an investigation into Mr. Jankowski's disappearance and/or death. (Affidavits). The investigators from IP&A presented George Estle, the CEO of Tanager Place, with the letter IP&A had faxed to

the facility the day before, outlining IP&A's federal authority and requesting specific information. (Exhibit C, Notification of Authority). Mr. Estle allowed IP&A's investigators access to Mr. Jankowski's files and to his residence. (Exhibit D, Affidavit of Matt Olsen; Exhibit E, Affidavit of Nancy Simon). He further allowed IP&A's investigators access to staff of Tanager Place. (Exhibit D, Affidavit of Matt Olsen; Exhibit E, Affidavit of Nancy Simon).

IP&A's investigators requested access to residents of Tanager Place. (Exhibit D, Affidavit of Matt Olsen; Exhibit E, Affidavit of Nancy Simon). Mr. Estle denied IP&A investigators access to any of the residents of Tanager Place. (Exhibit D, Affidavit of Matt Olsen; Exhibit E, Affidavit of Nancy Simon).

On June 2, 2004, A. Edie Bogzczyk, Legal Advocacy Director for IP&A, spoke with Vernon Squires, legal counsel for Tanager Place. (Ex. F, Affidavit of A. Edie Bogzczyk). Ms. Bogzczyk asked if the IP&A investigators would be allowed to interview the residents. (Ex. F, Affidavit of A. Edie Bogzczyk). Mr. Squires stated that he was not restricting IP&A's access. (Ex. F, Affidavit of A. Edie Bogzczyk). Mr. Squires further stated that he did not think that Mr. Estle would allow IP&A to interview any of the residents. (Ex. F, Affidavit of A. Edie Bogzczyk).

On June 3, 2004, the investigators returned to Tanager Place and renewed their request to interview residents of Tanager Place. (Complaint ¶ 22). Mr. Estle only allowed the investigators to interview one resident. (Complaint ¶ 22). Mr. Estle continues to deny the investigators unaccompanied access to interview any other resident of Tanager Place. (Complaint ¶ 23).

By denying IP&A's investigators access to the residents of Tanager Place, Defendants have substantially interfered with IP&A's ability to carry out its statutory duty under the PAMII

Act.  Defendants' conduct throughout this process has interfered with and hampered the Congressionally-mandated function and duties of IP&A, and has caused irreparable harm to the investigation of Mr. Jankowski's disappearance specifically.

I. **THE COURT SHOULD ISSUE PRELIMINARY INJUNCTIVE RELIEF BECAUSE IP&A WILL LIKELY PREVAIL ON THE MERITS OF ITS CLAIM, THE HARM TO IP&A OUTWEIGHS THE HARM TO DEFENDANTS, AND UNACCOMPANIED ACCESS TO THE RESIDENTS OF TANAGER PLACE IS IN ACCORD WITH THE PUBLIC INTEREST**

IP&A seeks preliminary injunctive relief to restrain Defendants from interfering with its ability to have unaccompanied access to the residents of Tanager Place as part of its investigation of the possible death of .  IP&A bears the burden of proving that it is entitled to injunctive relief. See Baker v. Electric Co-op v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994).  In determining whether a preliminary injunction should issue, the Court should consider:  (1) IP&A's likelihood of success on the merits; (2) the threat of irreparable harm to the to IP&A; (3) the balance between the harm to IP&A and the harm other interested parties would experience if the injunction were granted; and (4) whether the granting of the injunction is in the public interest. U.S. Ecology, Inc. v. State of Nebraska, 210 F.3d 887, 898 (8th Cir. 2000).

    A. **IP&A has a Right to Unaccompanied Access to the Residents of Tanager Place Under the PAMII Act**

The first piece of legislation involving protection and advocacy involved protection and advocacy for individuals with developmental disabilities.  Congress initially the legislation in response to the inhumane and despicable conditions which had been discovered at New York's Willowbrook State School for persons with developmental disabilities "to protect the human and civil rights of this vulnerable population."  Alabama Disabilities Advocacy Program v. Tarwater

Dev. Ctr., 97 F.3d 492, 494 (11th Cir. 1996); Wisconsin Coalition for Advocacy v. Czaplewski, 131 F. Supp. 2d 1039, 1045 (E.D. Wis. 2001) (citing to earlier version of the Developmental Disabilities Assistance and Bill of Rights Act of 2000, now found at 42 U.S.C. section 15001, *et seq.*).  Congress enacted the legislation to provide for allotments to support a protection and advocacy system in each State to protect the legal and human rights of individuals with developmental disabilities.  42 U.S.C. § 15041 (2000).

Subsequently, Congress enacted the PAMII Act, to provide for state allotments to establish protection and advocacy systems to "(A) protect and advocate the rights of individuals with mental illness; and (B) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred."  Id. § 10803.

On June 1, 2004, Judy Price, the Director of Quality Improvement at Tanger Place, called IP&A to report that Mr. Jankowski, who is a person with mental illness, may have drown in the Cedar River.  (Complaint ¶¶ 12-13).  The next day, IP&A investigators went to Tanger Place to investigate the possible drowning of Mr. Jankowski.  (Exhibit D, Affidavit of Matt Olsen; Exhibit E, Affidavit of Nancy Simon).  During the investigation, IP&A requested to interview residents from Mr. Jankowski's cottage.  (Exhibit D, Affidavit of Matt Olsen; Exhibit E, Affidavit of Nancy Simon).  George Estle, the CEO of Tanger Place, refused to allow the investigators unaccompanied access to the residents.  (Exhibit D, Affidavit of Matt Olsen; Exhibit E, Affidavit of Nancy Simon).  The investigators returned to Tanger Place on June 2, 2004, and renewed their request to interview the residents.  (Complaint ¶ 22).  Mr. Estle allowed

the investigators access to interview one resident only. (Complaint ¶ 22). Mr. Estle continues to deny the investigators unaccompanied access to interview any other resident. (Complaint ¶ 23).

Under 42 C.F.R. section 51.42 (2003) provides:

(a)     [a]ccess to facilities and residents shall be extended to all authorized agents of [IP&A].
(b)     [IP&A] shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to resident. [IP&A] shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under the investigation. . . .

Under the clear mandate of 42 C.F.R. section 51.42, IP&A has a right to reasonable unaccompanied access to the residents of Tanager Place as a part of its investigation into the disappearance of Mr. Jankowski. See also Iowa Protection & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C., 152 F. Supp.2d 1150, 1165-67 (N.D. Iowa 2001) (noting IP&A is entitled access to records and patients necessary for its investigation); Robbins v. Budke, 739 F. Supp. 1479, 1487 (D.N.M. 1990) (concluding protection and advocacy system had the right to private meetings with the patients of the facility). In part Mr. Estle has recognized IP&A's authority, by permitting IP&A access to one resident of Tanager Place. Mr. Estle's refusals of IP&A's requests for unaccompanied access to other residents of Tanager Place violate the direct mandate of the regulations under the PAMII Act. For these reasons IP&A has demonstrated it will likely succeed on the merits of its claim.

  **B. The Issuance of a Preliminary Injunction is in the Public Interest, and the Harm to IP&A and to the Public Outweighs any Possible Harm to Defendants**

Defendants will not be harmed if the Court directs them to comply with the provisions of the PAMII Act, which was adopted by Congress for the public interest. This is evident by Mr. Estle's grant of access to the investigators of one resident of Tanager Place on June 3, 2004. If Defendants are permitted to continue to deny IP&A access to the residents of Tanager Place, IP&A's investigation will be hampered because IP&A cannot fully investigate Mr. Jankowski's disappearance. Furthermore, the issuance of an injunction in this case will not subject Defendants to a penalty or hardship because the injunction merely requires Defendants to comply with the PAMII Act. See Advocacy Ctr. v. Stalder, 128 F. Supp. 2d 358, 368 (M.D. La. 1999). For these reasons, the Court should grant IP&A's request for a preliminary injunction.

## CONCLUSION

The Court should grant Plaintiff Iowa Protection and Advocacy Services, Inc.'s request for preliminary injunction because Plaintiff has proven it will likely succeed on the merits of its claim, the harm Plaintiff will experience if unaccompanied access to the residents of Tanager Place is not granted is greater than the harm to Defendants, and unaccompanied access to the residents is in accord with the public interest as expressed by Congress in the PAMII Act. For these reasons the Court should enter judgment in favor of Plaintiff.

/s/ Sharon K. Malheiro
Sharon K. Malheiro
Heather L. Palmer
Davis, Brown, Koehn, Shors & Roberts, P.C.
666 Walnut, Suite 2500
Des Moines, Iowa 50309-3993
Telephone: 515/288-2500
Facsimile: 515/243-0654
Sharon.Malheiro@lawiowa.com
Heather.Palmer@lawiowa.com

ATTORNEYS FOR PLAINTIFF

ORIGINAL FILED.

COPY TO:

Melissa Anderson
Bradley and Riley, P.C.
2007 1st Avenue SE
P. O. Box 2804
Cedar Rapids, Iowa 52406-2804

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on June 7, 2004 by:

|  US Mail | XX FAX |
| ρ Hand Delivered | ρ Overnight Courier |
| ρ Federal Express | XX Other: E-filing |

Signature: /s/ Sharon K. Malheiro