IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
(CEDAR RAPIDS DIVISION)

| | | |
|---|---|---|
| IOWA PROTECTION AND ADVOCACY SERVICES, INC., | ) ) ) | No. 1:04-cv-00069-LRR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TANAGER PLACE, and TANAGER, INC., | ) ) ) | |
| Defendants. | ) ) | |
| TANAGER PLACE, | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| IOWA PROTECTION AND ADVOCACY SERVICES, INC., | ) ) ) ) | |
| Counterclaim Defendant. | ) ) | |
| TANAGER PLACE, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| SYLVIA PIPER, | ) ) | **AMENDED COMPLAINT** |
| Third-Party Defendant. | ) ) | |

COMES NOW Plaintiff/Counterclaim Defendant, Iowa Protection and Advocacy Services, Inc., and for its Amended Complaint states as follows:

#1068701

## PRELIMINARY STATEMENT

1. Iowa Protection and Advocacy Services, Inc. (hereinafter "IP&A") is an independent non-profit agency that is created by federal law to serve individuals with disabilities.

2. Tanager Place is a psychiatric medical institution for children that is licensed to do business in Iowa in Cedar Rapids, Linn County, Iowa.

3. Tanager, Inc. is an Iowa corporation owned and operated by Mr. George Estle, the CEO of Tanager Place.

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331, federal question jurisdiction.

5. Venue is also proper under 28 U.S.C. section 1391(b).

6. IP&A has a federal mandate to conduct abuse and neglect investigations pursuant to 42 U.S.C. section 10801 *et seq*.

7. The State of Iowa has designated IP&A as the appropriate agency for conducting such independent investigations. A copy of the State's designation is attached hereto as Exhibit A, and is incorporated herein by this reference.

8. Under 42 U.S.C. section 10805(a), IP&A is authorized to investigate incidents of potential abuse and neglect of individuals with mental illnesses.

9. IP&A also is authorized to investigate potential abuse and neglect under Iowa Code chapters 135B, 135C and 135H.

10. The authorized investigations referred to in paragraphs 7 and 8 include access to a facility's staff and records relating to the purported victim, including but not limited to treatment plans, nursing and other staff progress notes, physician orders and progress notes; social history,

medical history and physical, medication lists, and medication administration records, and incident reports; restraint and seclusion records, individual habilitation plans and behavior management programs; facility policies, procedures, directives and guidelines in effect at the time of the alleged incident; communication with the facility's staff relating to the purported victim's treatment; access to all areas of the facility; unaccompanied access and communication with other residents; access to personnel files, including, but not limited to pre-hire criminal investigation background checks, performance evaluations, and any disciplinary/incident reports; and access to other records and information necessary to complete the investigation.

## FACTS

11. On or about May 29, 2004, Russell Jankowski, a resident at Tanager Place was reported as missing. Attached hereto as Exhibit B and incorporated herein by this reference is a news article from the Cedar Rapids Gazette regarding Mr. Jankowski.

12. Mr. Jankowski is a person diagnosed with a mental illness disability within the meaning of 42 U.S.C. section 10805.

13. IP&A became aware of Mr. Jankowski's disappearance when Judy Price, Director of Quality Improvement at Tanager Place called IP&A on June 1, 2004, to inform IP&A that Mr. Jankowski may have drown in the Cedar River.

14. Following the notification of Ms. Price of the possible drowning, IP&A sent by facsimile to Tanager Place a letter outlining IP&A's federal authority and requesting specific information. A copy of the letter is attached hereto as Exhibit C and is incorporated herein by this reference.

3

15. IP&A also sent by facsimile a request for records on June 1, 2004, requesting a list of the names of all residents receiving services at Tanager Place, the names of the residents' guardians, and contact information for the guardians. A copy of the records request letter is attached hereto as Exhibit D and is incorporated herein by this reference.

16. The following day, on June 2, 2004, in accordance with IP&A's federal mandate, investigators from IP&A arrived at Tanager Place and requested access to the facility to conduct an investigation into Mr. Jankowski's disappearance and/or death.

17. The investigators from IP&A presented George Estle, the CEO of Tanager Place, with the letter IP&A had faxed to the facility the day before, outlining IP&A's federal authority and requesting specific information. See Exhibit C.

18. IP&A's investigators were allowed access to Mr. Jankowski's files and to his residence. Affidavits signed by the IP&A investigators are attached hereto as Exhibits E and F and are incorporated herein by this reference.

19. IP&A's investigators were allowed access to staff of Tanager Place. See Exhibits E and F.

20. IP&A's investigators requested access to other residents of the facility. See Exhibits E and F.

21. Mr. Estle denied IP&A investigators access to any of the residents of Tanager Place. See Exhibits E and F.

22. On June 2, 2004, A. Edie Bogczczyk, Legal Advocacy Director for IP&A, spoke with Vernon Squires, legal counsel for Tanager Place. Ms. Bogaczyk asked if the IP&A investigators would be allowed to interview the residents. Mr. Squires stated that he was not

restricting IP&A's access. Mr. Squires further stated that he did not think that Mr. Estle would allow IP&A to interview any of the residents. An affidavit signed by Ms. Bogzczyk is attached hereto as Exhibit G and is incorporated herein by this reference.

23. On June 3, 2004, the investigators returned to Tanager Place and renewed their request to interview residents. Mr. Estle only allowed the investigators to interview one resident.

24. Mr. Estle continues to deny the investigators unaccompanied access to interview any other resident.

25. Tanager Place and Tanager, Inc. have yet to produce the requested list of all residents receiving services at Tanager Place, the names of the residents' guardians, and the contact information for the guardians.

26. By refusing to produce the requested list of all residents, the names of the residents' guardians, and the guardians' contact information and by denying IP&A's investigators access to the residents of Tanager Place, Tanager Place and Tanager, Inc. have substantially interfered with IP&A's ability to carry out its statutory duty.

27. Tanager Place's and Tanager, Inc.'s conduct throughout this process has interfered with and hampered the Congressionally-mandated function and duties of IP&A, and has caused irreparable harm to the investigation specifically.

## CAUSES OF ACTION

28. IP&A restates and incorporates by this reference each allegation contained in paragraphs 1 through 23 as if fully set forth herein.

29. The policy and actions of Tanager Place and Tanager, Inc. violate the right of IP&A to meaningful and timely access to the other residents of Tanager Place in violation of the

Protection and Advocacy for Mentally Ill Individuals Act of 1991, 42 U.S.C. section 10801, *et seq.*, and the policy and actions, unless enjoined will violate IP&A's right to that information in the event of future deaths and probable cause determinations.

## INJUNCTIVE RELIEF

30. IP&A seeks, after trial, that the Court permanently enjoin Tanager Place and Tanager, Inc., their agents and employees, from denying IP&A full and immediate unaccompanied access to the residents of the facility operated by Tanager Place and Tanager, Inc. if a complaint is received and/or IP&A determines that probable cause exists to believe that abuse, death or neglect occurred.

## DECLARATORY RELIEF

31. IP&A requests that after notice and hearing, this Court enter a declaratory judgment that Tanager Place's and Tanager, Inc.'s policies, regulations, practices and conduct of interfering with and denying IP&A proper and immediate access violates 42 U.S.C. section 10801 *et seq.*

## PRAYER

WHEREFORE, Plaintiff, IP&A, requests that this Court:

A. Enter a permanent injunction enjoining Tanager Place and Tanager, Inc., their agents and employees from denying IP&A full and immediate unaccompanied access to all individuals receiving services at Tanager Place if a complaint is received and/or probable cause exists to believe that abuse or neglect has occurred.

B. Enter a declaratory judgment that Tanager Place's and Tanager, Inc.'s policies, regulations, practices and conduct of denying access violate 42 U.S.C. section 10801.

C. Award such other relief that the Court deems equitable and just.

                                                   /s/ Heather L. Palmer
Sharon K. Malheiro
Heather L. Palmer
The Financial Center
666 Walnut, Suite 2500
Des Moines, Iowa 50309-3993
Telephone: 515/288-2500
Facsimile: 515/243-0654
Sharon.Malheiro@lawiowa.com
Heather.Palmer@lawiowa.com

ATTORNEYS FOR PLAINTIFF/
COUNTERCLAIM DEFENDANT/
THIRD PARTY DEFENDANT

ORIGINAL FILED.

COPY TO:

Vernon Squires
Bradley and Riley, P.C.
2007 1st Avenue SE
P. O. Box 2804
Cedar Rapids, Iowa 52406-2804

| PROOF OF SERVICE |
|---|
| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on     June 29    , 2004 by: |
| ▫ US Mail                   ▫ FAX<br>▫ Hand Delivered     ▫ Overnight Courier<br>▫ Federal Express     X Other: |
| Signature:    /s/ Heather L. Palmer |

Department of Health and Human Services
Office of Human Development Services
Administration on Developmental Disabilities
200 Independence Avenue, S.W.
Washington, D.C. 20201

Suggested Format for Submittal of
Protection and Advocacy System Assurances

State         : Iowa

P&A Agency:  Iowa Protection & Advocacy Services, Inc.

[ ]  Public Agency                    [X]  Other    (Private Non-Profit)

       P&A Agency                        Address where grant award
                                         is to be mailed.
Address:  3015 Merle Hay Rd., Ste. 6    Address:  3015 Merle Hay Rd., Ste. 6
          Des Moines, IA 50310                    Des Moines, IA 50310

Telephone:  515/278-2502                Telephone:  515/278-2502

_____[signature]_____ Date: April 29, 1991
Chief Executive Officer
   or
Designated State Official

Attachment A:  Protection and Advocacy
               System Assurances

EXHIBIT A

CR Gazette 6/2/04

# Boy feared to have jumped off bridge

## Teen's clothes found by bridge after leaving Tanager

**By Christoph Trappe**
The Gazette



**Russell Jankowski**
Missing

CEDAR RAPIDS — Russell Jankowski's family fears the 15-year-old might be the one who prompted reports of a person jumping off the 16th Avenue bridge into the Cedar River.

His family hopes his clothes were found near the bridge by some coincidence.

"We are concerned," said Richard Menadue, Jankowski's stepfather, of Dubuque. "He could be a runaway yet. But the assumption is he (committed) suicide."

Around 8 p.m. Saturday, Cedar Rapids police officers on the ground and the department's helicopter were called to the bridge after motorcyclists reported someone jumping into the water. Officers didn't find anyone but did find clothes along the riverbank.

After talking to police on Sunday, Menadue believes those clothes belong to Jankowski. He said they had his initials in them and a Tanager Place sign.

Just before police were called to the bridge, Jankowski had left Tanager Place, 2309 C St. SW, after an argument about a Frisbee on the roof, Menadue said Tuesday. Jankowski, who had since August stayed at Tanager Place, a residential facility for youths, then took off.

George Estle, Tanager Place chief executive officer, said privacy laws restrict him from commenting on residents.

He said the general policy is that staff don't chase residents who leave the property. They then file a missing person report with Cedar Rapids police.

Tanager Place filed a missing person report for Jankowski less than an hour before the report of the jumper came in.

Police said there was no new information on the case Tuesday.

Menadue, who is married to Jankowski's mother, Carol, said the boy had run away before but always returned after several hours.

Jankowski is white, has a blond buzz cut, is 6 feet tall, weighs 140 pounds and was wearing a race car shirt and red shorts when he was last seen.

Police have said they wouldn't search the river until a body is spotted from the air because the rain-swollen river is too treacherous.

■ Contact the writer: (319) 398-8488 or christoph.trappe@gazettecommunications.com

EXHIBIT B
tabbies



**IOWA PROTECTION AND ADVOCACY SERVICES**

950 Office Park Road
Suite 221
West Des Moines, IA
50265

Telephone
515.278.2502

Toll Free
1.800.779.2502

FAX:
515.278.0539

TTY
515.278.0571

Toll Free TTY
1.866.483.3342

E-mail:
info@ipna.org

June 1, 2004

Ms. Mary Estle-Administrator
Tanager Place
2309 C Street SW
Cedar Rapids, Iowa 52404

VIA FACSIMILE: June 1, 2004

Re: Probable Cause Investigation

Dear Ms. Estle:

Iowa Protection & Advocacy Services, Inc. (Iowa P&A) is an independent, non-profit agency operating under three separate federal statutes which charge the agency with the responsibility to protect and advocate for the human and legal rights of 1) persons with disabilities under the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (PADD), 42 U.S.C. § 15001 et. seq., 2) persons with mental illness under the Protection and Advocacy for the Mentally Ill Act of 2000 (PAIMI), 42 U.S.C. § 10801 et. seq., and 3) persons with disabilities under the Protection and Advocacy of Individual Rights Act (PAIR), 29 U.S.C. § 794e. The PAIR Act incorporates by specific reference all of the authority delineated in the PADD Act. 29 U.S.C. §794e(f)(2) and 34 C.F.R. §381.10(a)(2).

Pursuant to PADD, PAIMI, and PAIR, Iowa P&A has the authority to "investigate incidents of abuse and neglect of individuals ... if the incidents are **reported** to the system **or** if there is **probable cause** to believe that the incidents occurred." 42 U.S.C. 15043(a)(2)(B); 42 U.S.C.10805(1)(a); 29 U.S.C. §794e(f)(2).

Iowa P & A, through its duly appointed and authorized agent(s) Nancy Simon and Matt Olson (42 C.F.R. §51.42(a)(2001)) is conducting an investigation based on a determination that **probable cause** exists to believe that abuse or neglect of a resident or residents has occurred or is likely to occur. In accordance, access to your records, facilities and residents must be extended to these authorized agents as follows.

Access To Records:

Information and individual records, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P & A system shall include, but are not limited to: individual records; medical records; financial records; reports prepared or received by staff; reports prepared by an agency charged with investigating abuse, neglect or injury; personnel records; any supporting information relied upon in any report; discharge summaries; reports prepared by any licensing authority; professional performance, building or other safety



012303

A federally-funded program to defend and promote the human and legal rights of Iowans who have disabilities and mental illness

Ms. Mary Estle
June 1, 2004
Pg. 2

standards, demographic and statistical information. 45 C.F.R. §1386.22(b) and (c)(2001); 42 C.F.R. §51.41(c)(2001).

**Access to facilities and individuals:**

> "A system shall have reasonable unaccompanied access to public and private facilities which provide services, supports, and other assistance for individuals with developmental disabilities [mental illness, or other disability] in the state when necessary to conduct a full investigation of an incident of abuse or neglect . . . This authority shall include the opportunity: to interview any facility service recipient, employee, or other person, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation; and to inspect, view and photograph all areas of the facility's premises that might be reasonably believed by the system to have been connected with the incident under investigation."

45 C.F.R.§1386.22(f)(2001); 42 §51.42(b)(2001). Further, Iowa P & A shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times. 45 C.F.R. §1386.22(g)(2001); 42 C.F.R. §51.42(c)(2001).

This broad right of access to records, facilities, and individuals applies despite the existence of any State or local laws or regulations which attempt to restrict such access: although state law may expand the authority of the P&A, state law cannot diminish the authority set forth in the federal statutes. 45 C.F.R. §1386.21(f)(2001), 42 C.F.R. §51.31(i)(2001), and 42 C.F.R. §51.42(e)(2001). Finally, access to facilities, individuals, or records shall not be delayed or denied without the prompt provision of written statements of the reasons for the denial. 45 C.F.R. §1386.22(i)(2001); 42 C.F.R. §51.43(2001).

Confidentiality requirements and work product privileges, as well as an absence of authorizing language in the applicable statutes, prevents Iowa P & A from providing findings, conclusions, or exit information either during the course of the investigation or once the investigation is complete. I appreciate your cooperation in permitting access in accordance with the preceding authority.

Sincerely,
IOWA PROTECTION AND ADVOCACY SERVICES, INC.

Sylvia Piper
Executive Director

012303



**IOWA PROTECTION AND ADVOCACY SERVICES**

950 Office Park Road
Suite 221
West Des Moines, IA
50265

Telephone
515.278.2502

Toll Free
1.800.779.2502

FAX:
515.278.0539

TTY
515.278.0571

Toll Free TTY
1.866.483.3342

E-mail:
info@ipna.org

June 1, 2004

Ms. Mary Estle-Administrator
Tanager Place
2309 C Street SW
Cedar Rapids, Iowa 52404

VIA FACSIMILE: June 1, 2004

Re: Request for Records Regarding Tanager Place Residents

Dear Ms. Estle:

Iowa Protection and Advocacy Services, Inc. (Iowa P&A) is an independent, non-profit agency operating under three separate federal statutes which charge the agency with the responsibility to protect and advocate for the human and legal rights of 1) persons with disabilities under the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (PADD), 42 U.S.C. § 15001 et. seq., 2) persons with mental illness under the Protection and Advocacy for the Mentally Ill Act of 2000 (PAIMI), 42 U.S.C. § 10801 et. seq., and 3) persons with disabilities under the Protection and Advocacy of Individual Rights Act (PAIR), 29 U.S.C. § 794e. The PAIR Act incorporates by specific reference all of the authority delineated in the PADD Act. 29 U.S.C. §794e(f)(2) and 34 C.F.R. §381.10(a)(2).

Iowa P&A has been contacted by Judy Price, Director of Quality Improvement, about the situation regarding Russell Jankowski. Our agency is currently investigating this situation. **Please provide our agency with following information:**

**The List of names of all residents receiving services at Tanager Place, the list of names of their guardians, and contact information of their guardians.**

Per our federal authority, we are required to notify the guardians of all residents at Tanager Place when conducting an investigation. Please feel free to contact me if you have any questions. Thank you for your cooperation in providing this information.

Sincerely,

IOWA PROTECTION AND ADVOCACY SERVICES, INC.

Nancy Simon
Nancy Simon
Disability Rights Advocate/Investigator

sab012303



EXHIBIT D

*A federally-funded program to defend and promote the human and legal rights of Iowans who have disabilities*

# AFFIDAVIT OF MATT OLSEN

State of Iowa  )
               ) s.s.
County of Polk)

I, Matt Olsen, after first being duly sworn hereby depose and state as follows:

1. I am a Disability Rights Advocate/Investigator for Iowa Protection and Advocacy Services (IP&A).

2. On June 1, 2004, IP&A received a call from Judy Price, Director of Quality Improvement for Tanager Place. Ms. Price called IP&A to report a potential drowning of a resident, Russell Jankowski.

3. As a result of Ms. Price's call, IP&A began a probable cause investigation.

4. I went to Tanager Place to begin the probable cause investigation on June 2, 2004.

5. As a part of the investigation, I asked to review Russell Jankowski's files and his residence. I was allowed access to the files and the residence.

6. I asked to interview staff at Tanager Place. I was allowed to interview staff.

7. I asked to interview other residents at Tanager Place. George Estle, the CEO of Tanager Place would not allow me to meet with the residents.

8. I then asked to interview two of the residents from Russell Jankowski's cottage. George Estle, the CEO of Tanager Place would not allow me to meet with the resident.

Nothing Further Sayeth the Affiant.

*Matt Olsen*
Matt Olsen

Subscribed to and sworn to before me on this _3_ day of June, 2004

*Yvonne E. Coohey*
Notary in and for the State of Iowa

[Notary stamp: YVONNE E. COOHEY, Commission Number 721286, My Commission Expires 7-12-06]



EXHIBIT E

# AFFIDAVIT OF NANCY SIMON

State of Iowa )
              ) s.s.
County of Polk)

I, Nancy Simon, after first being duly sworn hereby depose and state as follows:

1. I am a Disability Rights Advocate/Investigator for Iowa Protection and Advocacy Services (IP &A).

2. On June 1, 2004, IP&A received a call from Judy Price, Director of Quality Improvement for Tanager Place. Ms. Price called IP&A to report a potential drowning of a resident, Russell Jankowski.

3. As a result of Ms. Price's call, IP&A began a probable cause investigation.

4. I went to Tanager Place to begin the probable cause investigation on June 2, 2004.

5. As a part of the investigation, I asked to review Russell Jankowski's files and his residence. I was allowed access to the files and the residence.

6. I asked to interview staff at Tanager Place. I was allowed to interview staff.

7. I asked to interview other residents at Tanager Place. George Estle, the CEO of Tanager Place would not allow me to meet with the residents.

8. I then asked to interview two of the residents from Russell Jankowski's cottage. George Estle, the CEO of Tanager Place would not allow me to meet with the resident.

Nothing Further Sayeth the Affiant.

Nancy Simon

Subscribed to and sworn to before me on this 3 day of June, 2004

Notary in and for the State of Iowa



# AFFIDAVIT OF A. EDIE BOGACZYK

STATE OF IOWA )
                ) ss
COUNTY OF POLK )

I, A. Edie Bogaczyk, being first duly sworn on oath, depose and state as follows:

1. I am employed as the Legal Advocacy Director for Iowa Protection and Advocacy Services, Inc. (hereinafter "Iowa P & A").

2. On or about June 1, 2004, Iowa P & A had probable cause to believe a resident of Tanager Place, Russell Jankowski, was being subjected to abuse and neglect.

3. At approximately 10:45am on June 2, 2004, I called Vernon Squires, attorney for Tanager Place, to determine whether there was going to be any access issues regarding Iowa P&A's investigation.

4. Mr. Squires informed me that he needed time to review Iowa P&A's access authority before he could determine whether Iowa P&A had access.

5. I provided Mr. Squires with the appropriate federal citation for his review.

6. Iowa P&A was allowed to proceed with its investigation by reviewing records and staff.

7. I asked Mr. Squires whether Iowa P&A's investigators would be allowed to interview residents of Tanager Place. Mr. Squires stated that he was not restricting Iowa P&A's access to the facility. However, Mr. Squires also stated that he did not think Mr. Estle would allow Iowa P&A to interview residents.

Nothing Further Sayeth the Affiant.

_____
A. Edie Bogaczyk

Subscribed and sworn to before me on this 3rd day of June, 2004.

YVONNE E. COOHEY
Commission Number 721286
My Commission Expires
9-12-06

_____
Notary Public - State of Iowa

EXHIBIT G