IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
(CEDAR RAPIDS DIVISION)

| | | |
|---|---|---|
| IOWA PROTECTION AND ADVOCACY SERVICES, INC., | ) ) ) | No. 1:04-cv-00069-LRR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TANAGER PLACE, and TANAGER, INC., | ) ) ) ) | |
| Defendants. | ) | |
| TANAGER PLACE, | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| IOWA PROTECTION AND ADVOCACY SERVICES, INC., | ) ) ) ) | |
| Counterclaim Defendant. | ) | |
| TANAGER PLACE, | ) ) | |
| Third-Party Plaintiff, | ) ) | **PLAINTIFF'S/COUNTERCLAIM DEFENDANT'S AND THIRD-PARTY DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESISTANCE TO TANAGER PLACE'S MOTION FOR DETERMINATION OF DEFAMATION PER SE** |
| v. | ) ) ) ) | |
| SYLVIA PIPER, | ) ) | |
| Third-Party Defendant. | ) | |

**TABLE OF CONTENTS**

Page

FACTUAL BACKGROUND ........................................................................................... 3

I. STANDARD FOR MOTION FOR SUMMARY JUDGMENT ................................ 6

II. PIPER'S STATEMENTS ARE NOT DEFAMATORY AND NOT
DEFAMATORY PER SE ............................................................................................ 7

III. IOWA P & A AND PIPER ARE ENTITLED TO SUMMARY
DISMISSAL OF TANAGER PLACE'S CLAIMS BECAUSE THE
STATEMENTS ARE TRUE OR SUBSTANTIALLY TRUE AND ARE
PROTECTED OPINIONS ......................................................................................... 10

    A. Iowa P & A and Piper are Entitled to Summary Judgment of
       Tanager Place's Claim because the Statements are True or
       Substantially True ........................................................................................ 10

IV. THE COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR
OF IOWA P &A AND PIPER BECAUSE THE ALLEGED
STATEMENTS ARE STATEMENTS OF OPINION PROTECTED
UNDER THE FIRST AMENDMENT ..................................................................... 14

CONCLUSION ............................................................................................................17

**FACTUAL BACKGROUND**

Plaintiff/Counterclaim Defendant Iowa Protection and Advocacy Services, Inc. (hereinafter "Iowa P & A") is a private, non-profit Iowa corporation which provides protection and advocacy services to persons with mental illness disabilities pursuant to the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (hereinafter "PAMII Act"), 42 U.S.C. section 10801, *et seq.* (App. at 119). Third-Party Defendant Sylvia Piper is the Executive Director of Iowa P & A. (App. at 119). Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Tanager Place is a psychiatric medical institution for children that is licensed to do business in Iowa in Cedar Rapids, Linn County, Iowa. (Complaint ¶ 2; App. at 121). Defendant Tanager, Inc. is an Iowa corporation owned and operated by George Estle, the CEO of Tanager Place. (Complaint ¶ 3; App. 121-122).

On or about May 29, 2004, R.J., a resident at Tanager Place was reported as missing. (6/6/2004 Article; App. at 123). R.J. is an individual with mental illness within the meaning of 42 U.S.C. section 10802(4). (Complaint ¶ 12; App. at 123).

Iowa P & A became aware of R.J.'s disappearance when Judy Price, Director of Quality Improvement at Tanager Place, called Iowa P & A on June 1, 2004, to inform Iowa P & A that R.J. may have drown in the Cedar River. (Complaint ¶ 13; App. at 123). That same day, Iowa P & A sent by facsimile to Tanager Place a letter notifying Tanager Place of its intent to conduct an investigation, outlining IP&A's federal authority, and requesting specific information. (Notification of Authority; App. at 123-124). Iowa P & A also asked for a list of the residents, the names of the residents' guardians, and the guardians' contact information. (App. at 124).

The following day, on June 2, 2004, Nancy Simon and Matt Olsen, investigators for Iowa P & A, arrived at Tanager Place. Simon and Olsen arrived at 10:00 a.m. and they were escorted into a conference room. (App. at 6). They met with Estle and gave him a copy of the probable cause letter that was faxed to the facility the day before. (App. at 6-7). They asked to see R.J.'s file, interview staff members and interview Tanager Place residents. (App. at 6-7). Estle informed them that he needed to consult with his attorney, and that there would be a problem with interviewing the residents. He then left the room. (App. at 6). Simon and Olsen called Iowa P&A to report Estle's response and the delay. (App. at 6-7).

At 10:45 a.m. Iowa P&A's legal director, Edie Bogaczyk called Tanager Place's counsel to determine whether there was going to be any issues with Iowa P&A's investigation. (Bogaczyk affidavit; Ex. F to Complaint). Mr. Squires informed Ms. Bogaczyk that he needed time review the federal authority. (Id.) However, during that conversation, Mr. Squires informed Mr. Bogaczyk that he did not think that Estle would allow Iowa P &A to interview residents. (Id.). In addition, Sylvia Piper, called Estle to see if they could work through any issues that he had so that Iowa P&A could begin their investigation. (App. at 2). Estle, however, would not come to the telephone nor did he return her call. (Id.).

Simon and Olsen sat in the conference room for almost two hours before Estle returned at 11:45 a.m.. (App. at 6). When he did return, he informed them that the Department of Inspections and Appeals (hereinafter "DIA") had R.J.'s file and that they could see it after DIA was done. (App. at 6-7). At this time, Simon and Olsen were taken to R.J.'s residence and were allowed to interview some staff. However, Estle again denied their request to speak to the residents of Tanager Place. (App. at 124).

4

After again consulting with Iowa P&A about the denial of access to the residents, Simon and Olsen asked to interview two residents from R.J.'s cottage. (App. at 6). Estle informed them he would need to speak to the treatment team before allowing the investigators access to any residents, and that the treatment team had left for the day. (App. at 124-125. Because it was late in the day, the investigators left Tanager Place. (App. at 116).

However, the next morning, June 3, 2004, the investigators returned to Tanager Place and renewed their request to interview residents of Tanager Place. (Complaint ¶ 22; App. at 125). Estle informed them that he did not speak to the treatment team about the interviews because he thought that Iowa P&A dropped that issue. (App. at 6-7). As happened the day before, Estle again left the room and the Iowa P&A investigators were required to wait until the treatment team could determine if the two residents could be interviewed. Again, the Iowa P&A investigators were delayed in their ability to conduct their investigation. (App. at 7). After speaking with the treatment team, Estle only allowed the investigators to interview one resident. (Complaint ¶ 22; App. at 125). Estle refused to allow Iowa P & A to interview the other resident because she was too medically fragile. (Complaint ¶ 23; App. at 125).

On June 3, 2004, Iowa P & A filed a Complaint against Tanager Place and Tanager, Inc., seeking preliminary and permanent injunctive relief and requesting access to the residents of Tanager Place pursuant to the PAMII Act. (Complaint). On June 5, 2004, an article appeared in the Cedar Rapids Gazette about the filing of this lawsuit by Iowa P&A. In that article, Piper was quoted as saying "Tanager Place has done everything within their power to roadblock our investigation." "When we went to the location, they refused to provide us access and delayed our ability to review records." (App. at 8).

5

Subsequently, on June 11, 2004, a second article appeared in the Cedar Rapids Gazette regarding the number of residents reported to have run away from Tanager Place. In that article, Ms. Piper is quoted as saying "We believe these children were in immediate jeopardy for their safety." (App. at 112-113).

Tanager Place filed a Counterclaim against Iowa P & A and a Third-Party Complaint against Piper for defamation. (Counterclaim/Third-Party Complaint). In the Counterclaim and Third-Party Complaint, Tanager Place alleges Piper made three allegedly defamatory statements to the Cedar Rapids Gazette: (1) "Tanager Place has done everything within their power to roadblock our investigation;" (2) "[w]hen we went to the location, they refused to provide us access and delayed our ability to review records;" and (3) that Tanager Place children "were in immediate jeopardy for their safety." (Counterclaim ¶¶ 21-22).

The Court later severed Tanager Place's pendant state law defamation claim, and held a separate hearing on Iowa P & A's request for permanent injunctive relief on July 20, 2004. The Court issued its ruling on September 30, 2004, from which Tanager Place has appealed. (9/30/2004 Order; Notice of Appeal). Tanager Place's defamation claims are the only claims before the Court at this time.

On March 25, 2005, Tanager Place filed a Motion for Pretrial Determination of Defamation Per Se. Iowa Protection and Advocacy is filing this motion for summary judgment in resistance to Tanager Place's motion.

## I. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriately granted when there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ.

P. 56(c); Harrington v. Wilber, 353 F. Supp. 2d 1033, 1038 (S.D. Iowa 2005). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the applicable law." Hammer v. The City of Osage Beach, 318 F.3d 832, 837 (8th Cir. 2003). "[T]he nonmoving party must go beyond the pleadings and, by affidavits or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." MHC Investment Co. v. Racom Corp., 254 F. Supp. 2d 1090 (S.D. Iowa 2002).

## II. PIPER'S STATEMENTS ARE NOT DEFAMATORY AND NOT DEFAMATORY PER SE

Defamation includes the twin torts of libel and slander. Barreca v. Nickolas, 683 N.W.2d 111, 116 (Iowa 2004). "Defamation involves the publication of written or oral statements which tend to injure a person's reputation and good name." Kerndt v. Rolling Hills Nat'l Bank, 558 N.W.2d 410, 418 (Iowa 1997). Slander is an oral publication of defamatory material. Wilson v. IBP, Inc., 558 N.W.2d 132, 139 (Iowa 1996). To establish a prima facie case of defamation, the plaintiff must demonstrate the defendant: (1) published a statement about the plaintiff; (2) the statement was defamatory; and (3) the statement concerned or involved the plaintiff. Taggert v. Drake Univ., 549 N.W.2d 796, 802 (Iowa 1996).

The court determines as a matter of law whether a statement is defamatory per se if the statement is "clear and unambiguous." Kiesau v. Bantz, 686 N.W.2d 164, 176 (Iowa 2004). If the court finds the statement is libelous or slanderous per se as a matter of law, then the burden shifts to the defendant "to prove the statement was used and understood in a different sense." Id. If a statement is susceptible to two or more meanings, the statement is not defamatory per se if

7

one of the two or more meanings is not defamatory. Lara v. Thomas, 512 N.W.2d 777, 785 (Iowa 1994).

In Tanager Place's Motion for Determination of Defamation Per Se, Tanager Place alleges Piper made two statements to the Cedar Rapids Gazette that are slanderous per se: (1) "Tanager Place has done everything within their power to roadblock our investigation" and (2) "[w]hen we went to the location, they refused to provide us access and delayed our ability to review records." (Brief in Support of Motion for Determination of Defamation Per Se at 3-4).

Statements are defamatory per se if they "are of such a nature that their publication will have a defamatory effect, even without a showing by the plaintiff of malice, falsity, or damage." Kerndt, 558 N.W.2d at 418. A statement is defamatory per se if it affects a person's business, profession, or trade, or attacks the person's moral integrity. Lara, 512 N.W.2d at 785. The Iowa Supreme Court has recognized several categories of statements as being slanderous per se, including the imputation of: (1) certain diseases; (2) indictable crimes; (3) incompetence in one's profession; and (4) unchastity. Barreca, 683 N.W.2d at 116. The Iowa Supreme Court has noted:

> Defamatory words, to be libelous *per se*, must be of such a nature that the court can presume as [a] matter of law that they will tend to disgrace and degrade the party or hold him up to public hatred, contempt, or ridicule or cause him to be shunned or avoided. The imputation must be one tending to affect a party in a society whose standard of opinion the court can recognize. In many cases, moreover, words charging plaintiff with the commission of acts permissible in law, although they may lack public approval, have been held not to expose plaintiff to hatred, contempt, ridicule, or disgrace in the sense or to the degree required by the law of libel; as, for instance, charging one with setting up the statute of limitations, or the illegality of a contract, as a defense. To accuse one of being deficient in some quality which the law does not require him as a good citizen to possess is not libelous *per se*. Mere general abuse and scurrility, however ill-natured and vexatious, is no more actionable when written than when spoken, if it does not convey a degrading charge or imputation.

8

Fey v. King, 194 Iowa 835, 840, 190 N.W. 519, 521 (1922) (further noting that "[s]ome degree of vituperation must be tolerated, in the interest of the larger peace of the community" and "[i]f all vituperation and ridicule were actionable *per se*, litigation -- and much of it petty -- would engulf society").

The statements "Tanager Place has done everything within their power to roadblock our investigation" and "[w]hen we went to the location, they refused to provide us access and delayed our ability to review records" are not slanderous per se because they do not charge Tanager Place with incompetence or lack of skill in its business. Compare Galloway v. Zuckert, 447 N.W.2d 553, 554-55 (Iowa Ct. App. 1989) (concluding while the statements that Zuckert did an "about-face" and that he "was unable to do business with Galloway 'on a handshake,' may tend to injure the plaintiff in the maintenance of his business, . . . they do not specifically charge him with incompetence or lack of skill" and that the statements were not synonymous with Zuckert being a liar or impute dishonesty to a great degree) with Lara v. Thomas, 512 N.W.2d 777, 785 (Iowa 1994) (concluding inquiries were slanderous per se because the imputation of substance abuse clearly reflected on the plaintiff's ability to perform her duties as a veterinary assistant). To the contrary, Piper's statements reflect her apparent discontent with Tanager Place's immediate response to Iowa P & A's investigation. There is nothing in the language of these statements rising to the level of a per se claim. For these reasons, Iowa P & A and Piper are entitled to summary judgment regarding Tanager Place's contention that the above statements are defamatory per se, and the Court should dismiss Tanager Place's Motion for Determination of Defamation Per Se.

## III. IOWA P & A AND PIPER ARE ENTITLED TO SUMMARY DISMISSAL OF TANAGER PLACE'S CLAIMS BECAUSE THE STATEMENTS ARE TRUE OR SUBSTANTIALLY TRUE

### A. Iowa P & A and Piper are Entitled to Summary Judgment of Tanager Place's Claim because the Statements are True or Substantially True

Truth or substantial truth provides a complete defense to a defamation claim. Marks v. Estate of Hartgerink, 528 N.W.2d 539, 545 (Iowa 1995) (concluding oral communications made to church members concerning the temporary suspension of the plaintiff's membership and his excommunication "merely conveyed true information to the congregation"); Hovey v. Iowa State Daily Pub. Bd., Inc., 372 N.W.2d 253, 255 (Iowa 1985) (reversing the district court's refusal to grant a directed verdict in favor of the defendant where the alleged communication was substantially true). Hence, in a defamation action, the defendant is "not required to establish the literal truth of every detail of the publication, as long as the 'sting' or 'gist' of the defamatory charge is substantially true." Campbell v. Quad City Times, 547 N.W.2d 608 (Iowa Ct. App. 1996). The Iowa Supreme Court has held:

> If the underlying facts as to the gist or sting of the defamatory charge are undisputed, the court may determine substantial truth as a matter of law. In that event, the test, for summary judgment purposes, is whether the plaintiff would have been exposed to any more opprobrium had the publication been free of error.

Behr v. Meredith Corp., 414 N.W.2d 339, 342 (Iowa 1987) (internal citations omitted).

Tanager Place contends that the statements "Tanager Place has done everything within their power to roadblock our investigation" and "[w]hen we went to the location, they refused to provide access and delayed our ability to review the records" are defamatory per se and that the facts of this case undermine the affirmative defense of truth because "[e]ach of Iowa P & A's witnesses - including Piper - have testified in detail as to the extent of cooperation and access

10

Tanager Place provided." (Brief in Support of Motion for Determination of Defamation Per Se at 7). Tanager Place relies on certain testimony from trial from Piper and Simon in discussing the access Tanager Place provided to Iowa P & A. (Brief in Support of Motion for Determination of Defamation Per Se at 7-10).

During Tanager Place's cross-examination of Piper, Tanager Place's attorney asked Piper whether Tanager Place's requirement of a meeting with the treatment team was reasonable, and she responded their requirement was reasonable. (Brief in Support of Motion for Determination of Defamation Per Se at 8; 7/20/2004 Tr. at 56-58). This evidence, taken alone does not support the argument that the above statements are false as a matter of law.

Tanager Place next avers that Piper further agreed in her deposition that Tanager Place did not intentionally disrupt or delay the investigation by consulting with legal counsel before allowing access nor did she believe that it was Tanager Place's fault that R.J.'s file was being reviewed by the Iowa Department of Inspections and Appeals (hereinafter "DIA"). (Brief in Support of Motion for Determination of Defamation Per Se at 8-9). In looking at the statements that appeared in the June 6, 2004 article, it is evident the statements do not reference delay resulting from Tanager Place's consulting of its attorney. (App. at 8). Moreover, as set forth below, Piper's concerns involved multiple delays and denials, included a delayed review of R.J.'s file, refusal to grant the access to the residents of Tanager Place, and refusal to provide Iowa P&A with the names and addresses of the guardians and parents of residents of the facility. (App. at 3,7).

Tanager Place further contends that Simon's testimony reveals that Iowa P & A received access to R.J.'s file after DIA was through reviewing it. (Brief in Support of Motion for Pretrial

Determination of Defamation Per Se). However, it is undisputed that Tanager Place delayed informing Iowa P&A about the status of file for nearly two hours after the investigators arrived. It did not inform Iowa P & A that the DIA had the file at the outset of their request. (7/20/2004 Tr. at 108). Iowa P&A investigators sat in a conference room for two hours before they were told that R.J.'s file was being reviewed by DIA, and they were not allowed to proceed with any other part of their investigation.

Upon arriving at Tanager Place, Iowa P&A investigators requested access to R.J.'s file, access to interview staff members and access to interview residents. The investigators were told immediately that interviewing the residents would be a problem. To avoid a delay, Piper immediately called Estle to discuss his concerns. However, Estle never returned Piper's calls. (App. at 2). Additionally, Bogaczyk called Squires to resolve any legal disputes. She was told that there would be no access to the residents.

Tanager Place fails to note these time delays and it fails to note that later, following the tour of the facility, and review of R.J.'s file, the investigators asked to interview the residents. (App. at 7). Tanager Place again responded "it was a problem" to speak with the residents. (App. at 7). In an effort to keep the investigation moving forward, Iowa P & A then requested to speak with two of the residents from R.J.'s residence, chosen at random. (App. at 7). Estle responded that he would need to consult the treatment team first. (App. at 7). Because it was late in the day, the investigators left. (App. at 7).

The next day the investigators returned to Tanager Place to interview the residents. (App. at 7). Estle responded that he believed Iowa P & A "had dropped that issue" and that he had not spoken with the treatment team. (App. at 7). The investigators responded that they still wanted

12

to speak with the residents of Dutton Cottage. (App. at 7-8). Again, Iowa P&A was delayed in conducting its investigation. Estle then left and when he returned he said that the investigators could speak to one of the two residents. (App. at 8). Estle did not provide the name(s) of the guardian(s) for the child they spoke with. (App. at 8). Tanager Place likewise refused to produce the names of remaining the residents of Dutton Cottage. Furthermore, Iowa P &A was denied access to the names and addresses of their parents and/or guardians until June 29, 2004, 23 days after the statements Tanager Place complains of appeared in the Cedar Rapids Gazette. (App. at 2, 125). Tanager Place's denial of access to both the information requested and the residents of Dutton Cottage prevented Iowa P & A from continuing with its investigation. (App. 3, 7).

It is clear from these undisputed facts that the "gist" or "sting" of Piper's comments that Tanager Place was road blocking the investigation, refusing access and delaying the investigation is substantially true and that summary judgment dismissing Tanager Place's claims is warranted as a matter of law.

Tanager Place avers Piper further defamed it through her purported statement that the children "were in immediate jeopardy for their safety." (Counterclaim ¶ 22). At the time Piper allegedly made this statement, Iowa P & A had probable cause to believe that R.J. had been subjected to abuse or neglect, based upon the telephone call it received from an individual working at Tanager Place reporting that he ran away and possibly drown in the river. Iowa P & A had further learned that the staff followed R.J. until he walked off the campus at 7:10 p.m., but did not make a run away report to the Cedar Rapids Police until 7:42 p.m., thirty-two minutes later. (App. at 14).

13

In addition, as the news article states, runaway reports from the Cedar Rapids Police Department indicated that 92 Tanager Place residents fled facility. In addition, prior to the time when Piper allegedly expressed her concern, Iowa P & A learned that one of the residents had been raped when she fled the facility. (Ap. at 17-111; 114-115 (names redacted from police reports). Piper's alleged statement is true or substantially true because at the time she made the statement, it is undisputed that Tanager Place permitted R.J. to walk away from the facility, did not report his disappearance for more than one-half hour and he was later found dead, 92 other residents fled the facility, and one of residents was raped when she fled the facility. Furthermore, the DIA confirmed Piper's beliefs, through its investigation of R.J.'s death, in which it found "[i]nvestigative information supports the conclusion that the facility failed to take sufficient measures to ensure the safety of the child and failed to take every reasonable effort to persuade the child from running away." (App. at 3, 14-15). Therefore, Piper's alleged statement regarding the safety of the children is true or substantially true. Based on the foregoing, Iowa P & A and Piper are entitled to summary adjudication of Tanager Place's defamation claims.

**IV. THE COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF IOWA P & A AND PIPER BECAUSE THE ALLEGED STATEMENTS ARE STATEMENTS OF OPINION PROTECTED UNDER THE FIRST AMENDMENT**

Under the First Amendment, statements of opinion are absolutely protected. Harrington, 353 F. Supp. 2d at 1041 (citing Jones v. Palmer Communications, 440 N.W.2d 884, 891 (Iowa 1989)). The courts determine as a matter of law whether a statement is one of fact or opinion. Secrist v. Harkin, 874 F.2d 1244, 1248 (8th Cir. 1989); Deupree v. Iliff, 860 F.2d 300, 303 (8th Cir. 1988). The Iowa Supreme Court has held statements of opinion are protected under the First Amendment, but statements of fact are not. Kiesau v. Bantz, 686 N.W.2d 164, 177 (Iowa 2004).

The factors the courts consider in determining whether a statement is one of fact or opinion include: "(1) [t]he precision and specificity of the statement; (2) [t]he verifiability of the statement; and (3) [t]he literary context in which the statement was made. Id. The Eighth Circuit Court of Appeals has included a fourth factor, "the public context in which the statement was made." Deupree, 860 F.2d at 303. This standard appears to be encompassed in the third factor adopted by the Iowa Supreme Court, which includes both the "social context", which involves the statement's style and intended audience, and the "political context" in which the statement was made. Kiesau, 686 N.W.2d at 177.

Under the first two factors, "if a statement is precise and easy to verify, it is likely a statement of fact" Jones, 440 N.W.2d at 891 (overruled on other grounds and later followed in Kiesau, 686 N.W.2d at 177). "In considering these factors, the statement must be taken as part of a whole, including the tone of the broadcast and the use of the cautionary language." Harrington, 353 F. Supp. 2d at 1041 (citing id.). The Eighth Circuit Court of Appeals has noted that its role is to "decide -- not whether a statement in isolation is by virtue of its phrasing factual -- but rather whether, when taken in context, the statement functions and would be understood as an unqualified assertion of fact rather than as an element of an opinion." Price v. Viking Penguin, Inc., 881 F.2d 1426, 1432 (8th Cir. 1989). In examining precision and specificity, the Eighth Circuit Court of Appeals has held:

> The precision and specificity with which an assertion is made may reflect the extent to which it actually recites specific factual events. Specificity also goes to the singularity of a statement's meaning. Where a statement or phrase is susceptible of more than one meaning, we will not presume either that the phrase means what the plaintiff asserts it does or that it is factual where it can be understood as an opinion.

Id.

The first two alleged statements Piper made to the Cedar Rapids Gazette that "Tanager Place has done everything within their power to roadblock our investigation" and "when we went to the location, they refused to provide us access and delayed our ability to review records" are arguably precise and specific. "Whether the statement is factual 'depends upon [Piper's] remarks, taken as a whole, of which the statement is a part." Deupree, 860 F.2d at 303. The statements reflect Piper's broader perception that by refusing and delaying access to residents, delaying review of records, and refusing to provide the names and addresses of the parents and guardians of the residents, Iowa P & A's mandate to investigate incidents of abuse and neglect of persons with disabilities is threatened. (App. at 8).

With regard to verifiability, the Eighth Circuit Court of Appeals has held "assertions whose elements are unverifiable, including statements regarding motive, are 'intrinsically unsuited' to serve as a basis for libel." Price, 881 F.2d at 1432. The statements allegedly made by Piper that Tanager Place has done everything within their power to block the investigation and to delay access are not verifiable, are subjective in nature, and are intrinsically unsuited to serve as a basis for slander. Deupree, 860 F.2d at 303. (noting statements reflected the defendant's broader perception that an emphasis on sexual education is misplaced and threatened the defendant's moral beliefs, and that the information was not verifiable); Kiesau, 686 N.W.2d at 177 (concluding the photograph was easily verifiable, supporting that it was one of fact and not opinion).

While the alleged statements do not contain any cautionary language, the statements were made in a political context to a newspaper, addressing Piper's concerns about access to facilities under the PAMII Act. In contrast, in Kiesau the photograph was not published in a political

16

context, rather, the defendant sent the photograph to fellow employees without a disclaimer. Id. For these reasons, the Court should find that the statements are statements of opinion, rather than statements of fact.

In analyzing Piper's alleged statement that "[Tanager Place] children were in immediate jeopardy for their safety", it is also clear that this statement is also a statement of opinion. The statement is specific in that it identifies Tanager Place, but reflects Piper's broader concern about the safety of other children at Tanager Place after learning that there had been a number of runaways from Tanager Place. (App at 17-115). Contrary to the situation in Kiesau, the statement is not verifiable, and was again made in the political context, supporting a determination that the statement is an opinion. Based upon the foregoing, Piper's claimed statements should be deemed protected statements of opinion, and Tanager Place's defamation claims should be dismissed.

## CONCLUSION

The Court should grant Iowa P & A's and Piper's Motion for Summary Judgment because the alleged statements made by Piper are not defamatory per se, the alleged statements are true or substantially true and the alleged statements are protected opinions.

/s/ Sharon K. Malheiro  
Sharon K. Malheiro  
Heather L. Palmer  
DAVIS, BROWN, KOEHN,  
 SHORS & ROBERTS, P.C.  
666 Walnut, Suite 2500  
Des Moines, Iowa  50309-3993  
Telephone:  515/288-2500  
Facsimile:  515/243-0654  
Sharon.Malheiro@lawiowa.com  
Heather.Palmer@lawiowa.com  

ATTORNEYS FOR PLAINTIFF/  
COUNTERCLAIM DEFENDANT/  
THIRD-PARTY DEFENDANT  

ORIGINAL FILED.

COPY TO:

Vernon Squires  
Bradley and Riley, P.C.  
2007 1st Avenue SE  
P. O. Box 2804  
Cedar Rapids, Iowa  52406-2804  

| **PROOF OF SERVICE** |  |
|---|---|
| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on May 13, 2005 by: | |
| ρ US Mail | ρ FAX |
| ρ Hand Delivered | ρ Overnight Courier |
| ρ Federal Express | X Other:  E-Filing |
| Signature:  /s/ Sharon K. Malheiro | |